**UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 1748, Plaintiff,**

**v.**

**MIDWESCO FILTER RESOURCES, INC., Defendant.**

**Civ. A. No. 94–0070–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

April 24, 1995.

Robert E. Paul, Zwerdling, Paul, Leibig, Kahn, Thompson & Driesen, Washington, DC, for plaintiff.

Gerald Richard Walsh, Gerald R. Walsh, P.C., Fairfax, VA, Joel I. Keiler, Ammerman & Keiler, Reston, VA, for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

By standing Order entered on June 26, 1992, this Court referred this case to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition. The Magistrate Judge filed his Report on February 23, 1995. On March 13, 1995 the plaintiff filed objections to the Report, and the defendant filed a response to the plaintiff's objections on March 27, 1995. Said objections and response having been lodged with this court in a timely and appropriate manner, this court is required to undertake a *de novo* determination. *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir.1982).

This case presents a labor dispute between a local union (the Union) and an employer of the union's members (the Employer) involving an alleged oral agreement to reinstate an employee. The parties have executed a collective bargaining agreement (the CBA) establishing a grievance procedure which includes arbitration. On September 29, 1994, the Union filed a Complaint to compel arbitration pursuant to § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, asserting that the parties' dispute is arbitrable. The Employer maintains, however, that it cannot be compelled to arbitrate because the dispute is outside of the scope of the collective bargaining agreement. Both sides have submitted motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons that follow, both parties' motions are denied.

### I.

The litigants in this case are parties to the CBA. The agreement contains a five-step grievance process culminating in arbitration, the fifth step. The CBA defines a grievance as "a difference or dispute between the Employer and the Union ... as to the interpretation or application of this Agreement." CBA Art. XIII, Sec. 1 at 26. In 1992, the Union submitted a grievance concerning the discharge of an employee, Jeff Larew (Larew). It pursued this grievance through step four, but the parties did not proceed to arbitration on this grievance. At some point around the end of step four, the Employer's president and a representative from the Union discussed possibly reinstating Larew. The Union contends that the Employer agreed to reinstate him without back pay, while the Employer denies that any agreement was reached. The Union then pursued the Employer's alleged breach of this oral agreement through the CBA's grievance procedures. This second grievance is the subject of this suit.

At the arbitration hearing, the Employer asserted that the dispute over the oral reinstatement agreement is not arbitrable because it is not covered by the CBA. It

maintained that the agreement, if any, simply was a side agreement separate from the terms of the CBA, and because Larew had been terminated he was no longer an employee to whom the CBA applied. The Union contends, however, that the agreement to reinstate Larew was reached in settlement of the first grievance over his termination, thus necessarily incorporating the procedures set forth in the CBA. The parties' post-hearing arbitration briefs addressed both the issue of arbitrability and the merits of whether a reinstatement agreement was reached. On June 28, 1994, the arbitrator ruled that he did not have jurisdiction to decide the question of arbitrability, but he retained jurisdiction over the dispute pending either a judicial decision finding that the dispute is arbitrable or the parties' agreement to permit him to decide the dispute. On August 1, 1994, the Union sent a letter to the Employer asking it to agree to allow the arbitrator to decide the dispute. The Employer never responded to this letter, and the Union filed this suit.

## II.

The Employer first argues that this suit to compel arbitration is barred by the applicable statute of limitations. The law regarding the statute of limitations for a § 301 suit to compel arbitration is, at best, unclear. The Employer argues that the limitations period is six months, relying on *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The Union contends that the applicable cutoff is either three years, based upon Virginia's statute of limitations for oral contracts, *see* Va.Code Ann. § 8.01–246 (Michie 1992), or one year, based upon Virginia's cutoff for actions in which no limitation is specified. *See id.* § 8.01–248.

A cause of action to compel arbitration accrues, and the statute of limitations begins to run, when the party sought to be compelled unequivocally refuses to arbitrate. *See, e.g., Local Joint Executive Board v. Exber, Inc.,* 994 F.2d 674, 675–76 (9th Cir. 1993); *Aluminum Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.,* 991 F.2d 1545, 1548 (11th Cir.1993); *Aluminum, Brick and Glassworkers Int'l Union*

*Local 674 v. A.P. Green Refractories, Inc.,* 895 F.2d 1053, 1055 (5th Cir.1990); *Communications Workers v. Western Elec. Co., Inc.,* 860 F.2d 1137, 1144 (1st Cir.1988); *Associated Brick Mason Contractors v. Harrington,* 820 F.2d 31, 38 (2d Cir.1987); *Niro v. Fearn Int'l, Inc.,* 827 F.2d 173, 177–78 (7th Cir. 1987); *McCreedy v. Local Union No. 971,* 809 F.2d 1232, 1237 (6th Cir.1987); *Federation of Westinghouse Indep. Salaried Unions v. Westinghouse Elec. Co.,* 736 F.2d 896, 902 (3d Cir.1984). A crucial issue, therefore, is when the Employer's refusal to arbitrate became unequivocal. The Employer contends that it was on December 13, 1993, the date of the arbitration hearing, when it argued against the arbitrability of the grievance. The Union asserts, however, that the cause of action accrued no earlier than August 1, 1994 when it sent a letter to the Employer requesting that it submit to arbitration. The parties agree on the fact of when these events occurred; they just disagree about their legal effect. Based upon the above-cited cases, it is clear that the Employer did not unequivocally refuse to submit to arbitration until, if at all, sometime after the Union sent the August 1, 1994 letter requesting it to arbitrate. The Employer's position that this unequivocal refusal came at the December 13, 1993 arbitration hearing is, by its own terms, wrong. On December 13, 1993, the Employer attended the arbitration hearing, and not only did it argue that the existence of the oral agreement was not arbitrable, but it also addressed the merits of the issue. The Employer cannot claim unequivocal refusal to submit to arbitration during the arbitration hearing to which it allegedly has refused to submit. Furthermore, in its post-hearing brief, the Employer stated one of the issues as "Was There an Oral Agreement to Reinstate Larew?" Quite simply, at that time the Employer did not unequivocally refuse to submit the issue to arbitration, notwithstanding any argument at that time that the issue was not arbitrable. Even after the Union sent the August 1, 1994 letter requesting the Employer to agree to arbitration, the Employer did not unequivocally refuse; it just did not answer. This suit was filed on September 29, 1994—less than two months after

the earliest time that the cause of action accrued. As a result, the court need not decide the particular limitation period applicable to this action. No reasonably applicable limitation period would bar it.

### III.

 The principal issue concerns the arbitrability of the existence and breach of the alleged oral agreement to reinstate Larew. Whether a dispute is arbitrable is a matter of contract. "A party cannot be compelled to submit a dispute to arbitration unless he contractually has agreed to do so." *Cumberland Typographical Union No. 244 v. The Times & Alleganian Co.*, 943 F.2d 401, 404 (4th Cir.1991) (citing *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)). If, as a matter of contractual interpretation, the court determines that the parties intended the dispute to go to arbitration, then § 301(a) of the LMRA permits specific enforcement of the agreement to arbitrate. *Id.* (citing *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 450–51, 77 S.Ct. 912, 914–15, 1 L.Ed.2d 972 (1957)). In determining whether a labor dispute is arbitrable, the Supreme Court has established the following four guiding principles: (1) the parties must have contracted to submit the grievance to arbitration; (2) the court must determine whether the contract provides for arbitration of the particular dispute at issue; (3) the court must not decide the merits of the dispute while determining its arbitrability; and (4) if the contract contains an arbitration clause, then a presumption of arbitrability arises. *Id.* (citing *AT & T*, 475 U.S. at 650, 106 S.Ct. at 1419). When the dispute concerns the existence or terms of the collective bargaining agreement, however, such deference to arbitration does not apply and the court should apply traditional principles of contract interpretation. *Local Union No. 637 v. Davis H. Elliot Co.*, 13 F.3d 129, 133 (4th Cir.1993).

Based upon this particular CBA, whether the parties agreed to submit this dispute to arbitration depends upon the context of the dispute. A distinction must be drawn between agreements that supplement the terms of a CBA, such as agreements to settle a grievance covered by the CBA, and side agreements that merely are collateral to the CBA. The Second Circuit Court of Appeals has stated:

> [W]e have held that where a later contract lacking an arbitration clause supplements an earlier 'umbrella' agreement containing such a clause, disputes under the later agreement are arbitrable. By the same token, if the contract and the [later contract] are 'collateral' to one another ... then the arbitration clause in the [CBA] does not apply to a dispute arising under the [later contract].

*Cornell University v. UAW Local 2300*, 942 F.2d 138, 140 (2d Cir.1991) (citations omitted). Furthermore, the Second Circuit has declared: "Where an agreement to arbitrate concerns disputes arising in the course of an ongoing relationship, a settlement of a single dispute does not terminate the agreement to arbitrate, and the validity of such a settlement is properly a matter for the arbitrator...." *Peerless Importers, Inc. v. Wine, Liquor, & Distillery Workers Union Local One*, 903 F.2d 924, 929 (2d Cir.1990). Although no other circuit has explicitly articulated such a distinction, other courts' jurisprudence is consistent with that of the Second Circuit. *See, e.g., Bechtel Constr., Inc. v. Laborers' Int'l Union*, 812 F.2d 750, 752–53 (1st Cir.1987) (recognizing that grievance arising from agreement that supplements collective bargaining agreement is for arbitrator to decide); *Office & Professional Employees Int'l Union, Local No. 9 v. Allied Indus. Workers Int'l Union*, 397 F.Supp. 688, 692 (E.D.Wis.1975) (holding that existence of agreement settling a grievance that arose under a collective bargaining agreement is arbitrable), *aff'd*, 535 F.2d 1257 (7th Cir. 1976).

Although the Fourth Circuit has not decided this issue, it has spoken to related issues and, thus, has provided substantial guidance in this situation. In *White v. National Steel Corp.*, 938 F.2d 474 (4th Cir.), *cert. denied*, 502 U.S. 974, 112 S.Ct. 454, 116 L.Ed.2d 471 (1991), the court examined whether § 301 preempted certain state law claims based

upon individually negotiated employment contracts rather than the collective bargaining agreement. The dispute in that case involved several employees who were promoted to managerial positions from positions covered by a collective bargaining agreement, and they alleged that their new contracts gave them the right to return to their old positions should the management positions be terminated. *See id.* at 478. In holding that the plaintiffs' contract claims were independent of the collective bargaining agreement, the court focused upon the origin of the plaintiffs' claims and found them to be dependent upon state law rather than the interpretation of any provision of the collective bargaining agreement. *Id.* at 482–83. The court distinguished cases in which the employer's duty was created by a collective bargaining agreement rather than the terms of their individual employment agreements. *Id.* at 483–84 (citing *International Brotherhood of Elec. Workers v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) and *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)). Necessary to the court's holding that the plaintiffs' state law claims were not preempted by § 301 was the recognition that the employer's promise to the plaintiffs of a right to return to their old positions was independent of the collective bargaining agreement. *See id.* at 482–83. As a result, the court's decision in this case is guided in part by the reasoning of *White.*

Based upon *White* and *Cumberland Typographical Union,* the crucial question seems to be whether the discussions concerning the alleged oral agreement to reinstate Larew arose out of any provision of the CBA or whether the Employer's promise, if any, was independent of the CBA. If the discussions which may or may not have culminated in an agreement were undertaken in attempted settlement of the first grievance, then it presumably would require reference to provisions of the CBA. For example, if the parties reached an oral reinstatement agreement in lieu of proceeding to arbitration, the fifth step of the CBA's grievance procedure, then the Employer's duty under the CBA's grievance procedures would be implicated and the Employer could be compelled to submit to arbitration. Conversely, if the first grievance was completely concluded and the parties began negotiating a wholly separate agreement to hire back Larew, then the provisions of the CBA would be irrelevant in determining the existence or breach of such separate agreement. If the provisions of the CBA do not apply, then the Employer cannot be compelled to submit to arbitration without its consent. *Cumberland Typographical Union,* 943 F.2d at 404.

In their pleadings, the parties disagree about the nature of the negotiations surrounding the alleged oral agreement to reinstate Larew. The Union asserts that the parties "engaged in a number of discussions after February 17, 1993 about the possibility of settling the Larew grievance," Complaint ¶ 10, but in its Answer the Employer denies this. The Employer alleges that the discussions were not undertaken in settlement of the Larew grievance, but rather as a side agreement wholly apart from any settlement of the Larew grievance. Because this is the pivotal issue in determining whether the dispute is arbitrable and the pleadings are in conflict about this point, neither party's motion for judgment on the pleadings may be granted.

The Union's lengthy objections to the Magistrate Judge's Report and Recommendation miss the point. The Magistrate Judge's Report recognizes the same distinction between settlement agreements and side agreements as does this court. The Union's objections focus on inconsequential semantic differences between a "supplemental" agreement and a "settlement" agreement. Furthermore, the objections assume no factual dispute over the core issue—whether the discussions preceding the alleged agreement arose in an attempt to settle a grievance that arose under the CBA. If the Employer did not deny in its Answer that the alleged agreement was in settlement of the first grievance, then the Union's objections would be well taken. This crucial denial, however, does appear in the Answer and is enough to defeat the Union's motion for judgment on the pleadings.

## IV.

The Union's Complaint to compel arbitration is not barred by the statute of limitations. The cause of action arose when the Employer unequivocally refused to submit to arbitration, which occurred no earlier than August 1, 1994. The Complaint was filed on September 29, 1994, early enough to comply with any arguably appropriate limitations period. In addition, both parties' motions for judgment on the pleadings are denied. The arbitrability of the dispute turns upon whether it arose under the CBA or independently from it; whether the alleged agreement was an attempt to settle the first Larew grievance or whether it was a side agreement not associated with the progression of the first Larew grievance under the CBA.

The proper course is to convert both parties' motions into motions for summary judgment and receive evidence directed to the issue of whether the discussions preceding the alleged agreement to reinstate Larew were undertaken in settlement of the first grievance or wholly apart from the first grievance. As developed above, if any alleged agreement was a settlement agreement, then the Employer can be compelled to submit to arbitration. If any alleged agreement simply was a side agreement separate from the grievance procedures of the CBA, then the Employer cannot be compelled to submit to arbitration. The court reminds the parties that it is concerned only with the arbitrability of the dispute, not with its merits. *See Cumberland Typographical Union,* 943 F.2d at 404. As a result, any evidence of whether an agreement ultimately was reached or breached is irrelevant and will not be considered by the court.