**CARA'S NOTIONS, INC. d/b/a Cara's Hallmark, Plaintiff,**

v.

**HALLMARK CARDS, INC. and Hallmark Marketing Corporation, Defendants.**

**No. 3:97cv18–P.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

April 21, 1997.

---

Jackson N. Steele, Charles H. Rabon, Jr., Kilpatrick Stockton L.L.P., Charlotte, NC, for Plaintiff.

Thomas D. Myrick, Smith Helms Mulliss & Moore, Charlotte, NC, for Defendants.

## ORDER

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on the Defendants' Motion to Compel Arbitration and Motion to Dismiss or in the Alternative to Stay Proceeding Pending Arbitration ("Motion to Compel Arbitration") [document nos. 2–1, 3–1, and 3–2 filed on January 22, 1997] and the Plaintiff's Request for Hearing [document no. 9–1, filed on March 7, 1997]. Plaintiff filed a response on February 10, 1997 ("Response") [document no. 6–1], to which the Defendants replied ("Reply") [document no. 8–1, filed on February 28, 1996]. Because the contracts at issue do not require the parties to arbitrate this dispute, the Court will deny the Defendant's Motion to Compel Arbitration. In addition, because the parties sufficiently presented the issues to the Court in their pleadings, a hearing is not required; therefore, the Court will deny the Plaintiff's Request for Hearing.

## BACKGROUND

In 1984, Roberta Gibson applied to Hallmark Cards, Inc. and Hallmark Marketing Corporation (collectively "Hallmark") to become a Hallmark retailer. Hallmark granted Roberta Gibson's application. In November 1984, Roberta Gibson opened Cara's Hallmark Shop—Hallmark Retailer account number 010825—at Town Center Shopping Center, 8528 University City Boulevard & Highway 49, Charlotte, North Carolina ("Store I").

In 1990, Betty Gibson and husband Jerald Gibson (the "Gibsons") bought Store I from Roberta Gibson. Hallmark approved the Gibsons as the new owners of Store I, and the parties entered into a contract ("Contract I").

In 1994, the Gibsons desired to purchase a second Hallmark shop in Concord, North Carolina which was operating as Carol's Hallmark Store ("Store II"). Hallmark required the Gibsons to undergo a completely new application process prior to purchasing Store II. No one from Hallmark mentioned that the new account application forms had anything to do with Store I. (Gibson Aff.

¶¶ 8, 9.) Hallmark approved the purchase and the Gibsons continue to own Store II.[1] The Gibsons entered into the contract for Store II ("Contract II").

Thereafter, Cara's Notions, Inc., owned by the Gibsons, operated both Store I and Store II. At all relevant times, the two shops had separate: Hallmark Retailer account numbers, employees, banking accounts, books and records, and reporting procedures to Hallmark.

In early 1995, the landlord at Town Center notified the Gibsons that the Gibsons would have to relocate Store I because a Harris Teeter grocery store intended to expand into Store I's space. The Gibsons advised Hallmark of the required relocation, and Hallmark expressed that it would assist them in finding a new location for Store I.

At Hallmark's request, the Gibsons informed Hallmark of a suitable location at a new shopping center called "The Village at University Place." Hallmark representatives inspected the center and indicated it was a favorable location. Hallmark then acted as the Gibsons' agent to acquire a lease at the new location.

However, Hallmark did not provide a lease or written lease approval to the Gibsons. Instead, in the Spring of 1996, Betty Gibson learned that Hallmark leased an 8,000 square foot space at The Village University Place for itself and would be opening a company-owned store in the fall of 1996.

In December 1996, Cara's Hallmark filed this action in state court against Hallmark regarding the relocation of Store I for alleged breach of duty of good faith and fair dealing, unfair and deceptive trade practices, usurpation of opportunity of the principal and misrepresentation, and sought actual and punitive damages. (Complaint.) On January 14, 1997, Hallmark removed the case to federal court. Hallmark then filed its Motion to Compel Arbitration.

In its Motion to Compel, Defendant Hallmark argues that an arbitration clause in Contract II dealing with Store II applies to Store I, and, therefore, this Court should compel arbitration of this matter concerning Store I. In contrast, Plaintiff contends that Contract I contains all of the conditions for Store I. Because Contract I does not contain an arbitration clause, this matter regarding Store I is not subject to arbitration. Moreover, Plaintiff asserts that absent an express provision to the contrary, the arbitration clause in Contract II cannot apply to Store I.

## DISCUSSION

The question for decision is whether the arbitration clause in Contract II applies to matters regarding Contract I. The general rule is that the issue of arbitrability is "a matter to be determined by the courts on the basis of the contract entered into by the parties." *Nursing Home & Hosp. Union v. Sky Vue Terrace*, 759 F.2d 1094, 1097 (3rd Cir.1985), *quoted in Cigna Securities, Inc. v. Calby*, 1993 WL 812680 (W.D.N.C.1993). Moreover, when parties to a contract collectively express their preference for arbitral, rather than a judicial, interpretation of their obligations, there is a strong presumption favoring arbitrability. *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL–CIO*, 430 U.S. 243, 251–52, 253–56, 97 S.Ct. 1067, 1072, 1073–74, 51 L.Ed.2d 300 (1977). The rationale is the legislature's policy in favor of settlement of disputes. The Fourth Circuit is in accord. *Cumberland Typographical Union No. 244 v. The Times & Alleganian Co.*, 943 F.2d 401 (4th Cir.1991) (holding that, under the Labor Management Relations Act, employer was required to arbitrate dispute arising under the collective bargaining agreement even though the dispute arose after the collective bargaining agreement terminated) (citing *Nolde Bros.*). This strong policy in favor of settling disputes is equally applicable to arbitration clauses outside the labor relations area like the matter at hand. *See e.g., Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (federal court required to compel arbitration under section 4 of the Federal Arbitration Act notwithstanding pending state court action).

---

1. Hallmark Retailer account number 007940.

■ However, despite the strong presumption of arbitrability, a court may not require that a party "submit to arbitration any dispute which he has not agreed to submit." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citations omitted). In determining whether the parties agreed to arbitrate a particular dispute, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) (citations omitted). Therefore, "as with any other contract, the parties' intentions control." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985).

In this case, there simply are no facts showing that the parties agreed or intended to arbitrate any dispute regarding Store I. Defendant Hallmark admits that "the agreement [Contract I] to operate the University City store [Store I] did not include an arbitration clause." (Motion to Compel Arbitration at 6.)

Instead, Hallmark asserts that the arbitration clause in Contract II compels arbitration, in addition to claims relating to Store II, of all claims regarding Store I. Hallmark's contentions are unavailing.

Contract I, regarding Store I, provided the following:

This agreement supersedes all prior oral or written representations and constitutes the entire understanding between Licensee and Hallmark with respect to the use of the HALLMARK trademark; in connection with Licensee's operation of the shop and may only be modified in writing.

Thus, Contract I specifically provided that any modification of the agreement concerning Store I must be in writing with a specific reference to Store I.

Nothing in Contract II refers to Store I. The arbitration provision in Contract II states in pertinent part:

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, or any aspects of the relationship between Hallmark and Retailer, or the termination thereof, shall be settled by binding arbitration under the United States Arbitration Act in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award may be entered in any court having jurisdiction thereof.... The arbitrator shall have no authority or jurisdiction to add to, subtract from or alter in any way the provisions of this agreement. Either party may, without inconsistency with this agreement to arbitrate, seek from a court any provisional remedy that may be necessary to protect trademark rights or to preserve property that is the subject of the arbitration pending the establishment of the arbitral tribunal or its determination of the merits of the controversy.

(Contract II ¶ 10.) Hallmark argues that the language "or any aspects of the relationship between Hallmark and Retailer" should be read to include the agreement regarding Store I. The Court disagrees.

First, Contract II states that "Retailer [Cara's Hallmark] is desirous of selling Hallmark brand products from store premises located at 280 U.S. Hwy 29 South, Concord, NC 28025 [Store II]." Hence, the boilerplate contract, in its introduction, specifically states that the contract is in reference to Store II.

■ Next, the provision relating to the scope of the contract provides: "This agreement supersedes all prior oral or written representations and constitutes the entire understanding between Retailer and Hallmark with respect to Retailer's status as *a* Hallmark *account* and may only be modified by written agreement of Hallmark and Retailer." (Contract II ¶ 8 (emphasis added).) As Plaintiff correctly points out, this clause speaks to the Retailer's status in the singular "a Hallmark account." This reference to an account in the singular, as opposed to the plural, can only mean that it referred to the specific account number that was the subject of the contract. In this case, it was Store II. Had the parties intended otherwise, they could have easily chosen language expressing such intent, e.g., "account(s)" Thus, Contract

II, by its own terms, specifically limits its scope to Store II. *See Swensen's Ice Cream Company v. Corsair Corporation,* 942 F.2d 1307 (8th Cir.1991). Consequently, the Court finds that the arbitration clause in Contract II does not apply to Store I. It follows that the Court must deny the Defendants' Motion to Compel Arbitration.

In their Motion to Compel, the Defendants rely heavily on the unreported decision in *Beyl v. Hallmark Marketing Corporation and Hallmark Cards, Inc.,* (No. cv. 95–382 (E.D. La. April 25, 1996)). In *Beyl,* the plaintiffs operated stores carrying Hallmark products in the cities of Slidell and Mandeville, Louisiana. The plaintiffs operated the stores under unexplained "oral arrangements" for several years prior to 1994 when they entered into a licensing agreement with Hallmark which covered only the store in Slidell. The agreement contained an arbitration clause identical to the one in issue in this matter. Plaintiffs subsequently sued Hallmark over a dispute involving both stores. The district court found that the arbitration clause could be applied to both stores.

First, the Court notes that the decision in *Beyl* has no binding effect on this Court. Second, the facts in this case are sufficiently distinguishable from those in *Beyl.* Most importantly, unlike the plaintiffs in *Beyl,* Plaintiff always operated, and continued to operate after opening Store II, Store I under an express written agreement (Contract I) which did not contain an arbitration clause. In *Beyl,* on the other hand, the plaintiffs did not have a previous written agreement when they entered into the Slidell store agreement containing an arbitration clause. As a result, the Slidell agreement was the only written agreement defining the relationship between plaintiffs and Hallmark.

### CONCLUSION

In sum, the Court finds that the arbitration clause in Contract II does not apply to claims regarding Store I.

**NOW, THEREFORE, IT IS ORDERED** that the Defendants' Motion to Compel Arbitration and Motion to Dismiss or in the Alternative to Stay Proceeding Pending Arbitration [document nos. 2–1, 3–1, and 3–2] be, and hereby are, **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Request for Hearing [document no. 9–1] be, and hereby is, **DENIED.**