**TENNESSEE VALLEY TRADES & LABOR COUNCIL**

v.

**TENNESSEE VALLEY AUTHORITY.**

No. 1:89–0115.

United States District Court,
M.D. Tennessee,
Columbia Division.

Nov. 8, 1990.

R. Jan Jennings, Branstetter, Kilgore, Stranch & Jennings, Nashville, Tenn., for plaintiff.

A. Jackson Woodall, Justin M. Schwamm, Sr., James E. Fox, Deputy Gen. Counsel, Tennessee Valley Authority, Knoxville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, Chief Judge.

Before the Court are a motion by defendant Tennessee Valley Authority ("TVA") to dismiss or for summary judgment and a cross motion by plaintiff Tennessee Valley Trades & Labor Council ("Council") for summary judgment. The dispute concerns whether the Council is entitled to an injunctive order directing that TVA promptly cooperate with the Council in the process of mediation and voluntary arbitration of three proposals that the Council presented during annual negotiations with TVA in December, 1988. Since matters outside the pleadings, i.e., affidavits, have been presented to the Court, the motion by TVA will be treated as one for summary judg-

ment. Fed.R.Civ.P. 12(c). Upon review of the facts and law in this case, and construing the facts in the light most favorable to the Council, this Court has concluded that TVA is entitled to summary judgment on two alternative grounds—(1) because the Council's action is barred by the six-month statute of limitations and (2) because, notwithstanding the time bar, none of the three proposals in issue is properly the subject of collective bargaining by TVA under the General Agreements.

### I. *Facts*

The Council is the collective bargaining representative of TVA's hourly and annual trades and labor employees. Each of TVA's collective bargaining agreements with the Council consists of a General Agreement, containing a number of "Articles" which set out the specific understandings between the parties and the parameters of their relationship, and a number of Supplementary Schedules implementing the Articles.

On December 6, 1988, TVA and the Council began regularly scheduled bargaining. The Council proposed a number of changes to the Supplementary Schedules, including the three proposals at issue in this case. First, the Council proposed to include language in the agreement covering hourly trades and labor employees that would have ended TVA's established practice of requesting employees by name from the union hiring halls.[1] Second, the Council proposed to include a provision in the contract covering annual trades and labor employees that would have required TVA to make contributions to the TVA Retirement System (the "Retirement System") based on the total time an employee worked, including overtime.[2] Third, the

---

1. The Council phrased this proposal as follows: Request no. 17–A–3: TVA fills vacant positions pursuant to Article III of each General Agreement, and via procedures detailed in Supplementary Schedule A–3 of the General Agreement for annual employees and Supplementary Schedule T–3 of the General Agreement for temporary hourly employees. TVA frequently utilizes hiring halls operated by the various international unions compromising [comprising] the Labor Council and often re-

quests referrals from those hiring halls by specifying the name of the person to be referred. *This bargaining proposal, if agreed upon, would result in a revision of Supplementary Schedule A–III and Supplementary Schedule T–III to prohibit calling by name for employment.*
Complaint, ¶ 5 (emphasis added).

2. The Council phrased this request as follows:

Council proposed that TVA agree to fund medical and dental insurance for retirees from its annual trades and labor workforce.[3]

The three proposals described above were raised at the bargaining table on December 6, 1988, and were not raised again after December 12. Negotiations closed on February 10, 1989. TVA labor negotiations refused to bargain about any of the three proposals. As to the first one (concerning elimination of calling employees by name from the hiring halls), TVA took the position that the Council's proposal was not a matter "explicitly covered" by the collective bargaining agreement, and thus was not a proper subject for negotiation. TVA relied on Article II of the General Agreements, which expressly provides, in pertinent part:

TVA recognizes the Council as the collective bargaining agent for employees at TVA in trades and labor classifications, and *agrees to bargain with the Council over every matter explicitly covered in this General Agreement.*

*TVA is not by this General Agreement agreeing to negotiate matters not explicitly covered in the General Agreement, including Supplementary Schedules.* (Such matters may be subject to

Request no. 17–B–25: TVA compensates its employees pursuant to Article VIII of each General Agreement, and via a schedule of wages detailed in Supplementary Schedule A–I of the General Agreement for hourly employees and Supplementary Schedule T–I of the General Agreement for temporary hourly employees. *This bargaining proposal, if agreed upon, would result in a revision of Supplementary Schedule A–1 and Supplementary Schedule T–1 by requiring that retirement benefits will be funded based upon total annual TVA income verses [versus] base rate of pay.*
Complaint, ¶ 5 (emphasis added).

3. The Council stated this proposal as follows:
Request no. 17–B–26: TVA compensates its employees pursuant to Article VIII of each General Agreement, and via a schedule of wages detailed in Supplementary Schedule A–I of the General Agreement for hourly employees and Supplementary Schedule T–I of the General Agreement for temporary hourly employees. *This bargaining proposal, if agreed upon, would result in a revision of Supplementary Schedule A–1 and Supplemen-*

negotiations if mutually agreed to by TVA and the Council.)
Complaint. Exhibits 1–2, Art. II (emphasis added). As to the second (contributions to Retirement System for annual employees) and third (medical and dental insurance for annual retirees) proposals, TVA's labor negotiators refused to bargain based on their position that the rules and regulations of the Retirement System, rather than provisions of the collective bargaining agreements, govern retirement issues. TVA relied on Article XIII of the General Agreement governing annual trades and labor employees, which provides the following:

XIII. Retirement System for Annual Employees

Annual employees who are eligible shall be members of the TVA Retirement System. *Such membership and the benefits thereof are governed by the rules and regulations of the system.*

Complaint. Exhibit 1, Art. XIII (emphasis added).

More than five months following the close of negotiations, the Council addressed a letter to TVA's Manager of Labor Relations requesting mediation of ten bargaining proposals made by the Council on which the parties had not reached agreement during negotiations.[4] The Council's

*tary Schedule T–1 by requiring that TVA fund retiree's medical and dental insurance.*
Complaint, ¶ 5 (emphasis added).

4. The General Agreements include the following provision entitled "Procedure for Revising Supplementary Schedules, Including Mediation and Voluntary Arbitration":

1. Rates of pay, hours of work, other working conditions, and other negotiated understandings established under this Agreement shall be in the form of Supplementary Schedules attached hereto. Such schedules relating to matters other than the determination of rates of pay may be amended in joint conference called upon 30 days' notice of either party by the other after they have been in effect for one year. If, however, agreement in such joint conference is not reached, either party may invoke the services of a mediator. The mediator shall be the joint selection of both parties from a panel of five suitable persons previously agreed to by the Council and TVA. The compensation and expenses of such mediator shall be borne jointly by TVA and the Council. A mediator so selected shall

**138**

request included the three proposals at issue here. TVA agreed to mediate seven of the unresolved proposals but refused to mediate the other three, taking the same position on the three proposals as it did at the bargaining table in December of 1988.

The Council filed its Complaint on September 26, 1989, requesting this Court to enter an injunctive order requiring TVA to proceed with the process of mediation as provided in the General Agreements. TVA responded with its Motion to Dismiss or For Summary Judgment, on the grounds that the Council's action is untimely and that the General Agreements do not require TVA to negotiate or mediate any of the Council's proposals. The Council then filed a Cross–Motion For Summary Judgment.

For the reasons detailed below, this Court has determined that there are no genuine issues of fact requiring determination at trial and that TVA is entitled to judgment as a matter of law. Consequently, TVA's Motion For Summary Judgment is granted, and the Council's Motion For Summary Judgment is denied.

## II.

### A.  *Summary Judgment Standard*

Summary judgment is appropriate only when "the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987). In examining the record to determine whether a genuine issue of material fact exists, the

district court must review all evidence in the light most favorable to the nonmoving party, and "all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

As the United States Supreme Court explained in *Liberty Lobby*, a dispute about a material fact is "genuine" within the meaning of Federal Rule of Civil Procedure 56 only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248, 106 S.Ct. at 2510. *See also Miles v. Kohli & Kaliher Associates, Ltd.*, 917 F.2d 235, 240–41 (6th Cir.1990).

After reviewing the evidence in the light most favorable to the Council, this Court has concluded that a reasonable jury could not return a verdict for the Council. Therefore, summary judgment is appropriately entered in favor of TVA.

### B.  *Statute of Limitations and Accrual of Cause of Action*

■ TVA argues that the U.S. Supreme Court decision in *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), dictates this Court's application of a six-month statute of limitations to the Council's suit. In *DelCostello* the Supreme Court held that the six-month limitations period in § 10(b) of the National Labor Relations Act (29 U.S.C.S. § 160(b)) governs claims for breach of the duty of fair representation by the union and breach of contract by the employer. TVA cites several cases decided by Tennessee federal courts which hold the *DelCostello* limitations period applicable to similar actions against TVA and the unions representing TVA employees. *See, e.g., McNabb v. TVA*, No. 1–89–142 (E.D.Tenn. Jan. 3,

use his best efforts by mediation to bring the parties to an agreement. If such efforts to bring about an amicable settlement through mediation are unsuccessful, the said mediator shall at once endeavor to induce the Council and TVA to submit their controversy to arbitration.

2. If arbitration is agreed to, the parties shall each appoint an arbitrator, and the third arbitrator shall be designated by the mediator. The decision of a majority of said arbitrators shall be final and binding on both parties.

The expenses of arbitration shall be borne equally by TVA and the Council. If arbitration, after being proposed by the mediator or by either party, is not accepted within 10 days, the mediator shall notify both the Council and TVA to that effect, and no modification or termination of any provision of any of these schedules shall be made by either party for a period of 30 days from expiration of said 10-day period.

Complaint. Exhibit 1, Art. XIV; Exhibit 2, Art. X.

1990); *Tennessee Valley Trades & Labor Council v. TVA,* No. 1–87–411 (E.D.Tenn. Dec. 1, 1988); *Gates v. TVA,* No. 3–85–604 (E.D.Tenn. Oct. 30, 1985); *Walls v. Jenkins,* No. 1–83–666 (E.D.Tenn. April 25, 1984); *Jackson v. TVA,* No. 1–83–225 (E.D. Tenn. Sept. 23, 1983).

The Council's brief at one point assumes that the *DelCostello* period applies,[5] but later asserts that the "most logical" statute of limitations is T.C.A. § 28–3–109, which provides that an action on a written contract must be brought within six years. The Council's construes its suit as a "straightforward breach of contract claim...." *See* Plaintiff's Memorandum at 9–10.

However, this Court is convinced that the six-month limitations period is the appropriate period to apply in this case. In *McCreedy v. Local Union No. 971, UAW,* 809 F.2d 1232, 1237 (6th Cir.1987), the Sixth Circuit held the *DelCostello* six-month period applicable to a suit by a union against an employer to compel arbitration. Moreover, in *Tennessee Valley Trades & Labor Council v. TVA,* No. 1–87–411 (E.D.Tenn. Dec. 1, 1988), the district court relied on *McCreedy* in holding the six-month statute of limitations applicable to a suit by the Council (i.e., the same plaintiff as in the case presently before this Court) to compel arbitration of a question concerning the General Agreement. Although the Council is seeking an order by this Court compelling *collective bargaining* over certain proposals to amend the Supplementary Schedules, as opposed to *arbitration,* the interest in stable bargaining relationships served by applying a relatively short statute of limitations to suits to compel arbitration is equally present in suits to compel mediation. *See DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294 ("when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have

not hesitated to turn away from state law."); *Tennessee Valley Trades & Labor Council v. TVA,* slip op. at 5 ("this case involves a ... day-to-day employment matter where speed and finality are pressing concerns"). Therefore, the six-month statute of limitations applies to this action by the Council to compel mediation of the three proposals.

■ The dispute between the parties on the timeliness issue does not end with the determination of the applicable statute of limitations. The parties also hotly dispute when the Council's cause of action accrued.

The Council contends its action is timely because it was brought within six months of July, 1989, when TVA notified the Council that it would not cooperate in mediating the three proposals. The Council explains that, when formal negotiations between itself and TVA ended in February of 1989, the parties were at an "impasse" concerning the ten bargaining proposals made by the Council (including the three at issue in this suit). In July of 1989, the Council requested in writing that TVA cooperate in mediation and voluntary arbitration of the ten disputes, but TVA agreed to mediate only seven of the disputes. Thus, according to the Council, the "final, unequivocal statement" by TVA that it would not cooperate in mediation of the three proposals did not occur until July of 1989, and, therefore, the present cause of action accrued at that time.

In contrast, TVA urges the Court to find that the running of the statute was triggered on December 6, 1988, when TVA notified the Council that the three proposals were not subject to negotiation. Pointing to the fact that the Council did not raise any of the three proposals after December 12, 1988 (until the Council formally requested mediation in July of 1989), TVA argues that the Council had unequivocal notice at least by December 12, 1988, that TVA would not negotiate the three disputed proposals.[6] TVA also takes issue

---

**5.** Memorandum In Support of Cross–Motion For Summary Judgment, at 6.

**6.** Formal contract negotiations between TVA and the Council continued until February of 1989.

with the Council's assertion that the parties reached an "impasse" over the three proposals; rather, says TVA, the three proposals could not have been bargained to impasse because they never were "bargained" at all. TVA points to the affidavit of J.B. Sandefur, Senior Labor Relations Officer at TVA, in support for its position that from the opening of negotiations on December 6, 1988, TVA's negotiators firmly held to their position that none of the three proposals was a subject about which TVA was required to bargain.

The Sixth Circuit in *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232 (6th Cir.1987), clearly stated the test for when a union's cause of action to compel arbitration (and, by implication, mediation) accrues: "A union's cause of action ... accrues *when the employer takes an unequivocal position that it will not arbitrate.*" 809 F.2d at 1237 (emphasis added). *See also Tennessee Valley Trades & Labor Council v. TVA*, slip op. at 5 ("The cause of action to compel arbitration accrued *when TVA took, and communicated to the plaintiffs, an unequivocal stand that it would not arbitrate the grievance.*") (emphasis added).

Thus, the critical question becomes when TVA took and communicated to the Council an unequivocal position against bargaining over the three proposals. This Court sides with TVA and finds that by "bargaining to impasse" seven of the ten proposals during the December 1988 negotiations, and by refusing to negotiate the other three proposals, TVA had taken an "unequivocal position" against mediating the three proposals, and had communicated this position to the Council, at least by the end of formal negotiations on February 10, 1989, if not in December of 1988.

The Council's focus on the *"final,* unequivocal statement" by TVA [7]—TVA's negative response to the Council's request for mediation made in July of 1989—is misplaced because TVA had already made clear its position against bargaining over the three proposals. The Council submits the affidavit of Charles F. Ashley, Assistant Administrator of the Council, which contains the assertion that TVA "stated for the first time" in July or August of 1989 that it would cooperate in mediating only seven of the ten disputes. However, this affidavit does not create a material issue of fact. Although TVA may not have rejected the Council's *mediation* request until late summer of 1989, it had already communicated its position on the non-negotiability of the three proposals. TVA is correct in pointing out that the Council waited over five months after the close of negotiations to request mediation and over seven months to file this lawsuit. Therefore, because the Council did not file its complaint in a timely fashion, TVA is entitled to summary judgment.

### C. Council Not Entitled To Mediate Three Proposals

This Court's determination that the Council's cause of action is barred by the six-month statute of limitations is dispositive of TVA's summary judgment motion. However, even assuming *arguendo* the Council is correct that its action is timely (because TVA did not communicate its "unequivocal position" against bargaining the three proposals until July or August of 1989), TVA still is entitled to summary judgment because the three proposals do not deal with subjects about which TVA is required to bargain under the General Agreements.

The critical language in the General Agreements provides that "TVA is not by this General Agreement agreeing to negotiate matters not explicitly covered in the General Agreement, including Supplementary Schedules." Complaint. Exhibits 1–2, Article II. As this Court agrees with TVA that none of the three proposals presents "matters" which are explicitly covered by the collective bargaining agreement, TVA is entitled to summary judgment because, even construing the Council's argument in its most favorable light, no reasonable jury could return a verdict in favor of the Council.

---

7. Plaintiff's Memorandum, at 9 (emphasis added).

### 1. The Proposal to Eliminate Call-by-Name

■ The affidavit of J.B. Sandefur submitted by TVA states that "TVA has never in the past agreed to negotiate concerning its practice of calling employees by name from hiring halls." Sandefur Affidavit, p. 2, ¶ 3. Moreover, the Council submits no evidence to disprove TVA's assertion that the method by which TVA selects its hourly trades and labor workforce is not specifically covered in the applicable collective bargaining agreement.

Instead the Council frames its argument in terms of the historically broad bargaining relationship between TVA and the Council. The Council points out that TVA has in the past negotiated with the Council concerning union security, and that the General Agreement for construction employees details how some union craftpersons are hired from halls operated by International unions within the Council. The Council also urges this Court to interpret the phrase "matters ... in the General Agreement" broadly to include the call-by-name issue.

Even accepting the apparent truth that the parties historically have bargained on a wide range of "matters," the Council has failed to show this Court how it can "get around" the current provision in the General Agreement expressly stating that TVA will not be required to bargain about any matter not *specifically* addressed by the Agreement or the Supplementary Schedules. Given TVA's proof that it has historically refused to bargain about the specific issue of relinquishing its management right to call by name, and given the explicit language in the General Agreement, this Court agrees with TVA that it was justified in refusing to bargain with the Council about the call-by-name proposal.

### 2. The Proposal to Change Retirement Contribution Rates

### 3. The Proposal to Require TVA to Pay Premiums For Retirees' Health Insurance

■ These two proposals can be considered together because they both involve interpretation of the General Agreement as it relates to the Retirement System.

TVA submits the affidavit of J.B. Sandefur for the proposition that TVA has never bargained in the past with the Council regarding either the basis for calculating the contributions of TVA on behalf of its trade and labor employees who participate in the Retirement System or the payment of the premiums for retiree health insurance coverage. Sandefur Affidavit, p. 3, ¶ 5.

In contrast, the Council again relies on the historical practice of TVA in negotiating with the Council regarding health insurance benefits for current employees (*cf.* retirees, who are the focus of the third proposal), and also on the joint establishment of the Retirement System by the TVA Board of Directors and the Council, to bolster its argument that the topics of the two proposals have been a subject of collective bargaining between the parties for many years, and, thus, by implication, are within the "matters" covered by the General Agreement.

TVA has a strong argument that the Rules and Regulations of the Retirement System, including the method of computing TVA's contribution rates, are not and never have been a subject of negotiations between TVA and the Council. TVA also has a strong argument that it never agreed to bargain about insurance benefits for retirees. The General Agreement itself specifically relegates matters concerning retirement to the Rules and Regulations of the Retirement System. Article XIII of the General Agreement for annual operating and maintenance employees provides the following:

XIII. Retirement System for Annual Employees

Annual employees who are eligible shall be members of the TVA Retirement System. *Such membership and the benefits thereof are governed by the rules and regulations of the system.*

Complaint, Exhibit 1 (emphasis added).

This Court has held that the Retirement System is a separate legal entity independent of TVA, operating under its own Rules and Regulations with its own Board

of Directors. *See Long v. TVA*, No. 3–85–0775, slip op. at 5 (M.D.Tenn. May 21, 1986) ("It is undisputed that the Retirement System is a separate entity and not a division of TVA.... Retirement System has the sole responsibility under the Retirement System's Rules to determine what benefits are payable and to make payment of benefits from Retirement System funds.") Moreover, as TVA correctly points out in its brief, a provision in the Rules and Regulations shows that the Retirement System has not authorized TVA to engage in collective bargaining on its behalf. Section 3.1 of the Rules and Regulations provides:

> The Board of Directors of the Retirement System of the Tennessee Valley Authority shall have the *control over and the responsibility for* the general administration of the System in accordance with the Trust Agreement and the Rules and Regulations insofar as are involved *matters relating to the computation of necessary contributions by TVA and by the participants, the allowance of benefits, and the rights generally of the beneficiaries of the System.*

Affidavit of Parker W. Newcomb, exhibit A at 8.

This Court is convinced that retirement contributions and benefits are not specifically covered by the applicable General Agreement. In fact the General Agreement itself explicitly states that membership and benefits of the Retirement System are governed by the System's own Rules and Regulations. Section 3.1 of the Rules and Regulations makes clear that the System has independent authority to determine contribution rates and benefits. Consequently, a ruling by this Court that TVA has the authority to bargain on behalf of the Retirement System would be error.

TVA is entitled to summary judgment, therefore, because the two proposals dealing with amendments to the Rules and Regulations of the Retirement System were not proper "matters" for collective bargaining between TVA and the Council.

### III.

Defendant TVA is entitled to summary judgment on two alternative grounds—(1) because the Council failed to file its complaint within six months of TVA's communicating its "unequivocal position" that the three proposals were not negotiable; and (2) because TVA is not required to negotiate the Council's three proposals as the "matters" proposed for mediation are not explicitly covered in the General Agreements between the parties.

For the foregoing reasons, summary judgment is entered in favor of the defendant, TVA. It is so ordered.

### ORDER

In accordance with the accompanying memorandum, summary judgment is entered in favor of the defendant, Tennessee Valley Authority. The plaintiff's cross-motion for summary judgment is denied. Accordingly, this action is dismissed.