180 F.3d 368,
 In the Matter of the Arbitration of Certain Controversies
Between I.B.E.W. SYSTEM COUNCIL U-7 and Kevin
Graham, Plaintiffs-Appellees,
v.
NEW YORK STATE ELECTRIC & GAS CORPORATION, Defendant-Appellant.
 Docket No. 98-9176.
 United States Court of Appeals,
Second Circuit.
 Argued April 13, 1999.
Decided May 24, 1999.
 
 Appeal from a judgment of the United States District Court for the Southern District of New York (Fox, M.J.) compelling appellant to arbitrate a labor dispute. Affirmed.
 LESLIE PRECHTL GUY, Hinman, Howard & Kattell, Binghamton, NY., for Defendant-Appellant.
 CHERYL A. McCAUSLAND, Law Office of Timothy S. McCausland, Roscoe, NY., for Plaintiffs-Appellees.
 Before: VAN GRAAFEILAND, JACOBS and STRAUB, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant New York State Electric & Gas Corporation ("NYSEG") appeals from an order of the United States District Court for the Southern District of New York (Fox, M.J.) denying NYSEG's motion for summary judgment dismissing plaintiffs' proceeding to compel arbitration of a labor dispute and granting plaintiffs' cross-motion to compel NYSEG to arbitrate the labor dispute. The parties agreed to proceed before Magistrate Judge Fox for all purposes, including trial.
 
 
 2
 The labor dispute centered around NYSEG's termination of Kevin Graham, a NYSEG employee. The district court held that the six month statute of limitations applicable in actions to compel labor arbitration did not bar plaintiffs' cause of action because NYSEG did not unequivocally refuse to arbitrate so as to start the limitation period running. For the reasons that follow, we affirm.
 
 
 3
 Kevin Graham was a member of Liberty Local Union 945, one of eleven local unions that comprise the International Brotherhood of Electrical Workers System Council U-7 ("IBEW"). IBEW is the exclusive collective bargaining representative of NYSEG's production and clerical employees. NYSEG suspended Graham in July 1992 after he had an argument with a member of the public during his working hours. As prescribed in the collective bargaining agreement between IBEW and NYSEG, IBEW filed a grievance on behalf of Graham. In December 1992, Graham fought with a former NYSEG employee at a company party and was terminated. IBEW again filed a grievance on Graham's behalf.
 
 
 4
 Both grievances went through the first four steps of the grievance process without resolution. The fifth and final stage was labor arbitration. Generally, IBEW provided legal counsel for its members in any arbitration proceeding, but Graham and the union agreed that Graham could have his personal counsel represent him.
 
 
 5
 In November 1993, Graham retained Anthony LaBella to represent him in the arbitration. IBEW president Stanley Bystrak advised NYSEG manager Richard Benson of this fact, and Bystrak arranged to have the Arbitrator List of the Federal Mediation and Conciliation Services ("FMCS") sent to LaBella, Thereafter, NYSEG counsel James Franz attempted to contact LaBella on five occasions between January 31 and March 3, 1994 in order to proceed with the panel selection. LaBella did not respond.
 
 
 6
 One letter from NYSEG sent on February 8, 1994 informed LaBella that "[i]f we do not hear from you by February 24, 1994, we will presume that you do not intend to proceed with this matter." The final letter on March 3 stated
 
 
 7
 After a series of attempts to contact you regarding the above referenced cases, we sent you a letter on February 8, 1994 again requesting that you contact us and indicating that, if we did not hear from you by February 24, 1994, we would presume that the grievant does not intend to proceed. As we still have not heard from you, we presume that the grievant no longer wishes to proceed with these cases. The employer is therefore closing its files with respect to this matter and will so notify [the union].
 
 
 8
 NYSEG then informed IBEW that NYSEG deemed the arbitration demand abandoned. IBEW wrote to Graham on March 13, 1994, enclosing the March 3 letter to LaBella and returning the arbitration fees which Graham had advanced.
 
 
 9
 On December 16, 1994, Ross Solomon, a new counsel retained by Graham, wrote to the FMCS requesting that the arbitration be scheduled. FMCS responded on January 16, 1995, suggesting that Solomon contact IBEW since IBEW had not yet authorized Solomon to appear as Graham's counsel.
 
 
 10
 More than a year later, on September 25, 1996, Cheryl McCausland, a third counsel retained by Graham, contacted NYSEG and IBEW, informing them that Graham wanted to pursue the arbitration. NYSEG argued that Graham had abandoned his claims and therefore could not compel NYSEG to arbitrate the grievances. NYSEG also pointed out that Graham had filed a malpractice suit against LaBella in which he alleged that LaBella's negligence in pursuing the arbitration resulted in Graham being barred from ever arbitrating his dispute.
 
 
 11
 Magistrate Judge Fox disagreed with NYSEG and held that Graham could proceed with the arbitration. Judge Fox concluded that the statute of limitations did not start running in March 1994 because NYSEG had not "unequivocally decided not to arbitrate" when it stated that Graham had abandoned the arbitration claim and that NYSEG was "closing its files." Judge Fox interpreted these statements as an indication of NYSEG's frustration over LaBella's refusal to participate instead of an unequivocal notice by NYSEG that it would not arbitrate the dispute.
 
 
 12
 Judge Fox also ruled that Graham's pending malpractice suit against LaBella was not determinative of the arbitration issue in this case. Accordingly, Judge Fox denied NYSEG's motion for summary judgment and granted IBEW's motion for summary judgment compelling arbitration. We review the grant of summary judgment de novo. Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 63 (2d Cir.1997).
 
 
 13
 In Associated Brick Mason Contractors v. Harrington, 820 F.2d 31, 37 (2d Cir.1987), we held that the six month limitation period in section 10(b) of the NLRA applies to actions to compel a labor arbitration. Accordingly, a party must bring an action to compel arbitration within six months of the other party's refusal to arbitrate. Here, plaintiffs argue that NYSEG did not refuse to arbitrate the dispute in March 1994 so as to start the limitations period running. We agree.
 
 
 14
 In order for a cause of action to compel a labor arbitration to accrue, a party must have clearly and unequivocally refused to proceed. That is not what NYSEG did in the instant case. Instead, it simply announced the status of the arbitration proceeding. Because Graham did not contact NYSEG or make any move to select the arbitration panel, NYSEG "presume[d] that [Graham did] not intend to proceed." NYSEG closed the files due to Graham's apparent lack of interest. There was nothing to indicate that NYSEG would refuse to arbitrate if Graham manifested a desire to resume the grievance process. Only in later correspondence did NYSEG start the limitations clock by expressly refusing to arbitrate in response to union requests. See Local Joint Executive Bd. of Las Vegas v. Exber, Inc., 994 F.2d 674, 676 (9th Cir.1993) ("[t]o start the statute of limitations running, an unequivocal, express rejection of the union's request for arbitration must be communicated to the union."). Plaintiffs filed the current cause of action within the proper time limit. See Aluminum Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp., 991 F.2d 1545, 1547-49 (11th Cir.1993).
 
 
 15
 The fact that Graham brought a malpractice suit against his original attorney, LaBella, does not dictate a different result. This could have been simply a matter of covering all contingencies. Graham might not have wanted a limitation period to run on his cause of action against LaBella, while he awaited the outcome of his demand for arbitration against NYSEG. It did not constitute a concession that in March 1994 NYSEG clearly and unequivocally refused to bargain.
 
 
 16
 The order of the district court is affirmed.